**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. 3:25-CR-176 |
| DARNELL NEY, | (MEHALCHICK, J.) |
| Defendant | |

**MEMORANDUM**

Pending before the Court is the objection of defendant Darnell Ney ("Ney") to the final Presentence Report ("PSR") prepared by the United States Probation Office in this matter (Doc. 36). For the reasons that follow, Ney's objection is **OVERRULED**.

I.    BACKGROUND AND PROCEDURAL HISTORY

On July 1, 2025, a federal grand jury indicted Ney on one count of failure to register in violation of 18 U.S.C. § 2250(a) (Doc. 1). On September 24, 2025, Ney pleaded guilty to this charge. The final PSR was filed on December 18, 2025 (Doc. 30). Ney objects to the application of U.S.S.G. § 2A3.5(b)(1)(A), which provides for a six-level enhancement if, "while in a failure to register status, the defendant committed … a sex offense against someone other than a minor." The only dispute before the Court is whether Ney committed a sex offense while in failure to register status.[1] Ney submits that the government fails to meet its burden of proving by a preponderance of the evidence that he did so.

---

[1] Although the Government raises the issue of whether the term "sex offense" is ambiguous such that the Court should apply the three-step framework in *United States v. Nasir*, 17 F.4th 458 (3d Cir. 2021), the Court does not find it necessary to engage in that analysis. Ney does not make any argument that the offenses leading to the enhancement are not sex offenses, only that the government did not prove that Ney committed the offense. Further, the offenses in question include rape by threat of forcible compulsion in violation of 18 Pa.

## II.    BURDEN OF PROOF

The Government "bears the burden of proving by a preponderance of the evidence that a sentencing enhancement applies." *United States v. Payo*, 135 F.4th 99, 106 (3d Cir. 2025); quoting *United States v. Napolitan*, 762 F.3d 297, 309 (3d Cir. 2014). Information used by a court as a basis for sentencing must have "sufficient indicia of reliability to support its probable accuracy." *United States v. Miele*, 989 F.2d 659, 663–64 (3d Cir. 1993); *United States v. Torres*, 926 F.2d 321, 324 (3d Cir.1991) (citing U.S.S.G. § 6A1.3(a) and noting the necessity that the information upon which Guidelines sentences are based be reliable). Pursuant to U.S.S.G. § 6A1.3(a):

> [W]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.
>
> U.S.S.G. § 6A1.3(a).

In this case, the Court reviewed the exhibits submitted by Ney and the Government, and conducted an evidentiary hearing on Ney's objection, at which the Court heard testimony from Trooper Riccardo Godino and Deputy United States Marshal Nicholas Knight.

## III.    EVIDENCE OF OFFENSE

The evidence received at the hearing on the objection is as follows. First, the Court heard testimony from Trooper Godino. Trooper Godino testified that he responded to a request for a welfare check requested by a friend of the victim, who claimed that the individual

---

C.S.A. § 3121(a)(2) and sexual assault in violation of 18 Pa. C.S.A. § 3124.1. Under any definition, those crimes are sexual offenses.

later identified as Ney was in her home without her permission, refusing to leave, and had committed other crimes while there. Trooper Godino preliminarily investigated both the complainant and the alleged victim to see if there were any histories or other reasons to question the allegations. Finding none, he reviewed the text messages the complainant provided to him in requesting the welfare check and found them to be credible. Upon arriving at the victim's home, Trooper Godino testified that another trooper approached the front door, at which point the victim opened the door. In response to questions by Trooper Godino, the victim relayed that the individual had physically and sexually assaulted her, raped her, and was refusing to leave her residence. Once the victim was secured in a safe part of the property, Trooper Godino testified that he entered the property with the other trooper present to assist in the clearing of the residence. The troopers located three people inside the residence – Ney, another male, and the victim's mother.

The victim then went to the station to give an interview to Trooper Godino. Trooper Godino testified that the victim met Ney on a dating website, and after their first date, went on a second date after which she agreed Ney would stay the night and she would drive him home the following day. The victim told Trooper Godino that Ney refused to leave her residence. Trooper Godino also testified that the victim described a physical assault and several verbal threats, including Ney making gestures with his hand in the shape of a gun.

Trooper Godino also testified that the victim reported that Ney sexually assaulted her. Specifically, Trooper Godino testified that the victim told him that Ney followed her into her bedroom, got in bed with her, and removed her pants and underwear, despite the victim telling him "no" and that she did not want to engage in intercourse with him. Trooper Godino

further testified that the victim relayed to him that Ney told her to shut up and proceeded to have sex with her without her consent. Specifically, Trooper Godino testified:

> I believe she had described that she had verbally related to him, no, and that she did not want to engage in any type of sexual act. And she attempted to, I believe, sit up quickly; but he had, more or less, restrained her in a fashion in which he was still able to overpower her and have sex with her by his force – by force.

He also testified that the victim told her that, following the assault, Ney "never allowed her out of his sight" and monitored her cell phone and limited her ability to come and go even within her residence. Trooper Godino also testified that he found the victim's account of what happened consistent and believable, remaining the same and accurate each time they reviewed it.

At the evidentiary hearing, the Government introduced several exhibits corroborating Trooper Godino's testimony. Government Exhibit 1 is the handwritten victim/witness statement form. In that statement, the victim recounts the assault by Ney, describing it as follows:

> I was laying on my stomach. I felt him come closer and his hand pulling my panties down. I shot up cuz, no, absolutely not, not after that day I had with him. I couldn't. He pushed me back down, told me that I know I wanted it, and to stop playing. The second he put it in, I froze. I just froze. I was raped when I was 13. And I always said a man was gonna have to kill me to rape me again. But that didn't happen. I just froze.

The Government also introduced a series of text messages (Government Exhibit 5) that were sent between the victim and the complainant. Trooper Godino testified that the messages were obtained by the Pennsylvania State Police and the United States Attorney's Office in connection with the case. Trooper Godino identified a text message from the victim in which she stated that she was raped. He also identified a text message in which the victim says "he's watching me like a hawk."

4

The Government also introduced the Pennsylvania State Police General Offense Report (Government Exhibit 2) during Trooper Godino's testimony. Trooper Godino testified that the report contained the criminal complaint and affidavit of probable cause that he executed in support of the charges against Ney after his arrest at the victim's residence. Ney was charged with rape, threat of forcible compulsion; unlawful restraint, involuntary servitude; terroristic threats with intent to terrorize another; simple assault; sexual assault; harassment, subject other to physical contact; false identification to a law enforcement officer; marijuana, small amount, personal use; and use and possession of drug paraphernalia. Trooper Godino testified that the evidence to support the charge of rape included the victim's formal verbal interview, her written statement, and the text messages. As to sexual assault, Trooper Godino testified that the victim's statements of how the assault occurred supported this charge.

Trooper Godino also testified as to the plea agreement Ney entered in Susquehanna County, in which Ney pleaded guilty to unlawful restraint and terroristic threats. He also testified that at Ney's sentencing hearing, the victim provided a victim impact statement in which she reiterated under oath that she was raped. A review of Government's Exhibit 3, the transcript of that sentencing hearing, confirms Trooper Godino's testimony. The transcript of the statement includes, "Darnell Ney raped me" and "I was raped, I was assaulted, I was held hostage in my own home…."

On cross examination, Trooper Godino admitted he did not perform a rape kit or collect any evidence of a sexual crime from the victim's residence, but explained that because there had been consensual sex, any evidence found would have been inconclusive. He also testified that although the part of the victim's written statement in which she wrote "I shot up

5

cuz, no, absolutely not, not after that day I had with him" could have been the victim recounting what was in her mind, and not verbally saying "no" out loud, the victim did tell him during her verbal interview that she verbally told Ney "no" in the moment of the assault.

The Government also presented the testimony of Deputy United States Marshal Nicholas Knight at the hearing. Deputy Knight testified that he interviewed the victim. The Government introduced the recordings of the interview into evidence. Deputy Knight testified that in the interview, the victim stated that she was raped by Ney. A review of the interview (Government Exhibits 9 and 10) confirms Deputy Knight's testimony. Although Ney attempts to discredit the credibility of the victim by highlighting snippets of the interview in which the victim's demeanor was "fairly neutral" or where she even seems "a little lighthearted," the complete interview includes the victim referencing the assault and rape several times.

## IV.    DISCUSSION

The sentencing guideline found at § 2A3.5(b)(1)(A) provides for a six-level enhancement if, "while in a failure to register status, the defendant committed … a sex offense against someone other than a minor." The parties do not dispute that Ney was in failure to register status at the time of the alleged offense that forms the basis of the enhancement. Nor do they dispute that the victim of the offense was not a minor. Ney only contends that the Government did not meet its burden of proving by a preponderance of the evidence that Ney committed a sex offense. Ney disputes that he committed the alleged sex offense and argues that the Government cannot meet its burden because it relies on hearsay evidence that does not have the sufficient indicia of reliability, and there is no good cause as to why the victim

did not testify at the sentencing hearing, in violation of Ney's due process right to confront witnesses at sentencing.

Ney's argument as to his right to confront the victim at sentencing fails. It is well settled that the Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a sentencing hearing. *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007); citing *Williams v. Oklahoma,* 358 U.S. 576, 584, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *United States v. Kikumura,* 918 F.2d 1084, 1099-1100 (3d Cir.1990) (holding that the Confrontation Clause only applies at trial, not sentencing). Hearsay testimony maybe relied upon by the sentencing court so long as it bears some minimal indicium of reliability beyond mere allegation. *United States v. Smith*, 751 F.3d 107, 116 (3d. Cir. 2014); *Robinson*, 482 F.3d. at 246.

The Court finds that the victim statements to Trooper Godino and Deputy Knight possess the requisite degree of reliability. The victim has the most reliable firsthand knowledge of what occurred. Her statement and recounting of the assault and rape did not vary or waver, either in her verbal statement to Trooper Godino, her written statement, or her interview with Deputy Knight. Her statements are consistent in different forms and with different law enforcement officers. Her account of the assault and rape is supported by the text messages between her and the initial complainant. Although Ney attempts to discredit her reliability by remarking on her "lighthearted" tone at times, the Court does not find that moment in the interview to discredit the victim's statements about the assault and rape. Considering the entirety of the record and the multiple, consistent, credible statements by the victim, the Court finds that the hearsay statements offered by the Government through the testimony of

7

Trooper Godino and Deputy Knight more that meet the "minimal indicium of reliability beyond mere allegation."

Further, the Government meets its burden of proving by a preponderance of the evidence that the sentencing enhancement applies here. *Napolitan*, 762 F.3d at 309; *United States v. Grier,* 475 F.3d 556, 568 (3d Cir.2007) (en banc). The enhancement in U.S.S.G. § 2A3.5(b)(1)(A) does not require proof that Ney was *convicted* of a sex offense while in failure to register status, only that he *committed* a sex offense. *See United States v. Gomez*, 129 F.4th 954, 958 (6th Cir. 2025) (a sentencing enhancement only requires a conviction when the relevant guideline expressly says so); *United States v. Kokinda*, 146 F.4th 405, 420 (4th Cir. 2025)(the Guidelines only require commission of a sex offense, not a conviction); *United States v. Lott*, 750 F.3d 214, 220-21 (2d Cir. 2014).[2, 3] Rape by forcible compulsion, a violation of 18 Pa. C.S.A. § 3121(a)(2) is defined as when "[a] person … engages in sexual intercourse with a complainant … [b]y threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." Sexual assault, a violation of 18 Pa. C.S.A. § 3124.1, is defined as when a "person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." The credible evidence in this case, including Trooper Godino's testimony, Deputy Knight's testimony, the victim's statements and interviews, the text messages between the victim and the complainant, and the police reports,

---

[2] The Court is unaware of any decisions by the Third Circuit Court of Appeals or any of its district courts that address this specific guideline.

[3] These cases address the subpart of the guideline applying the enhancement in instances of a "sex offense against a minor" rather than "someone other than a minor." The first part of the guideline subsection, "the defendant committed," is applicable whether the victim is a minor or not.

establish by a preponderance of the evidence that Ney, while in failure to register status, committed a sex offense, rape and sexual assault, as defined under Pennsylvania law, against a person other than a minor.

**V.     CONCLUSION**

For the foregoing reasons, Defendant Darnell Ney's objection to the application of U.S.S.G. §2A3.5(b)(1)(A) is overruled, as his objection to the language of Paragraph 48 of the final Presentence Report. An appropriate Order follows.

**Date: February 24, 2026**                        /s/ *Karoline Mehalchick*
                                                                      **KAROLINE MEHALCHICK**
                                                                      **United States District Judge**